| AOC-105 Doc. Code: CI | | Case No. | 2018-CI-1573 |
| Rev. 1-07 | | | |
| Page 1 of 1 | | Court | ✓ Circuit ☐ District |
| Commonwealth of Kentucky | | | |
| Court of Justice www.courts.ky.gov | | County | Fayette |
| CR 4.02; CR Official Form 1 | **CIVIL SUMMONS** | | |

**PLAINTIFF**

Misty                Lynn        Wesley

P.O. Box 24363

Lexington, Ky. 40517

VS.

**DEFENDANT**

Sheila Hughes Rouse

3150 Custer Drive, Suite 303

Lexington, Ky. 40517

**Service of Process Agent for Defendant:**

Fayette County Sheriff Department and/or U.S. Postal Service

150 N. Limestone and/or 3525 Lansdowne Drive (Post office with photos)

Lexington, Ky. 40507/40517

Kentucky

**THE COMMONWEALTH OF KENTUCKY**
**TO THE ABOVE-NAMED DEFENDANT(S):**

You are hereby notified a **legal action has been filed against you** in this Court demanding relief as shown on the document delivered to you with this Summons. **Unless a written defense is made by you or by an attorney on your behalf** within 20 days following the day this paper is delivered to you, judgment by default may be taken against you for the relief demanded in the attached Complaint.

The name(s) and address(es) of the party or parties demanding relief against you are shown on the document delivered to you with this Summons.

Date: ___MAY 1 4 2018___, 2_____

                       VINCENT RIGGS, CLERK     Clerk
           By:  FAYETTE CIRCUIT COURT     D.C.
                       CIVIL DIVISION
                       120 N. LIMESTONE STREET C103
                       LEXINGTON, KENTUCKY 40507

| **Proof of Service** |
| This Summons was served by delivering a true copy and the Complaint (or other initiating document) to: |
| |
| this _____ day of _____, 2_____. |
| Served by: _____ |
| _____ Title |

EXHIBIT 1

1

Commonwealth of Kentucky

Fayette Circuit Court

3rd Division

Civil Division

Civil Action No.  18-CI-1573

FILED
ATTEST, VINCENT RIGGS, CLERK
MAY   7 2018
FAYETTE CIRCUIT CLERK
BY                          DEPUTY

At:  U.S. District Court Judge and Circuit Judge assigned

Federal and Circuit enjoined together

Re:  Request for a Jury Trial with this case

Misty Lynn Wesley                                                 Plaintiff

v.

### Complaint

Accessible Home Care, ET AL.                              Defendants

Bill & Kaye Hughes, Sheila Rouse, Michelle Walters,

Mark Williams, and KY UI Commission Board


\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Comes now the plaintiff of record, Misty Lynn Wesley, and for her complaint to both courts. As grounds for this said Complaint, she states that the employer, Accessible Home Care has worked her under the federal minimum wage standard and violated wage and hour overtime laws as well as committed defamation, slander and libel acts and other causes of action and she states as follows:

### U.S. District Court Jurisdiction

1) 29 C.F.R. Wage and Hour Overtime Violations
### Circuit Court Jurisdiction
1) Breach of Contract
2) Breach of Implied Covenant

3)  Concealment and Misrepresentation
4)  False Advertising and Unfair Business Practices
5)  Defamation, Slander and Libel Acts
6)  Harassment
7)  Equal Pay Act Violations
8)  Good Faith Limitation Breach
9)  Reversal of Agency Action for UI Benefits
10)   Employee on and off the job claim with statements being entered with subpoenas being denied by UI office

## Introduction

This civil case begins by the plaintiff applying for a part-time job at Accessible Home Care owned by Bill and Kaye Hughes to supplement her income. This establishment is located at 3150 Custer Drive, Suite 303, Lexington, Ky. 40517 now.  At the time of hire, the plaintiff told the employer that she was permanently disabled and had extreme difficulty using her right arm i.e. such as lifting, thrusting, or carrying anything heavy.  She passed the background check and the employer was told about the misdemeanor on her record and the judge docket has now disappeared from the District Court's files.  The employment manual was given to the plaintiff and she signed for it and all other testing that needed to take place before employment began at Accessible Home Care.  The next day, she began to work for the above aforementioned employer.  Pursuant to the Defendant's policy and procedure manual for the At-Will doctrine, under Jones v. Review Board of Indiana Employment Security Division because the employer has the right to set business hours, working schedules, and working conditions in the absence of a specific agreement; However, the employee has the legal right to place conditions or limitations on his or her employment.  If such conditions are made known to the employer (AKA, Accessible Home Care) the employer was told per text that the Plaintiff will not switch days to have day off because of this being a Forced Labor Condition RICO and the employer/defendant never told the employee otherwise so this became a contractual working condition contract.  If the working conditions are unilaterally changed by the defendant, Accessible Home Care (this was done by the owner, Bill Hughes, of Accessible Home Care, conspiring with the client's son-in-law, Mark Williams under the court case of Great American Federal vs. Novotny under 1983(5)), and

the employee/plaintiff chooses to terminate the employment rather than accept the change, the employee will be entitled to her Unemployment Benefits since the reason for terminating the working relationship was a change in the working schedule agreed to be performed by the employee/plaintiff and the plaintiff further states to this court that the defendant's reason was not an emergency for the other employee to go to the ballgame when she could have watched the game on television and such reasoning defines and constitutes good cause under Wade v. Hurly, 515 P. 2d., 491(Col. Ct. App. 1973) as well as Gray v. Dobbs House, Inc., 357 N.E. 2d 900 (Ind. Ct. App., 1976)) and this breached the defendant's policy and procedure manual on page 6. The defendant continued to lie and tell the first investigator that it was mandatory that the live-ins switch with each other (reinforcing the conspiracy agreement with the owner, Bill Hughes and Mark Williams) (Defamation, Slander and Libel acts from Mark Williams with statement signed and entered into the UI record) and the investigator called the plaintiff at home and ask her about this issue. She told the investigator that there was no such agreement and the only agreement that the plaintiff made was to work 3 days on and 3 days off and she told her to call the employer and look at the employment manual and ask for the agreement signed by the plaintiff of record. The investigator ruled against the plaintiff. The plaintiff appealed and quoted the exact cases that she has quoted for the court and the appeal referee ruled against the plaintiff again and affirmed the ruling. The ruling has been copied for the court to review. The plaintiff openly tells this court that she has not received the sworn testimony yet from the unemployment office nor the ruling for the Unemployment Commission Board. The plaintiff openly states that she should have never lost this case and this is why the injunctive order has been requested and she hopes that the court now understands why the case was filed before the Commission ruled on the case. The EEOC charge letter has been notarized and the plaintiff has copied this for the court for review as well as the last text message that was sent to the employer when they would not call the plaintiff back when she asked about the schedule change. The court should note that this defendant has been told on multiple occasions about their violating the law. The EEOC charge letter was notarized for the EPA violations and Title VII to make it federal jurisdiction pursuant to F.C.R.P. 8(a) and the EPA for the Circuit court to enforce for the wage discrimination.

## Background

The plaintiff began employment by being assigned to a client located off of Clays Mill Road in Lexington, Ky. She really loved this old couple that she was assigned to but the male was very difficult to lift with her arm being so damaged. The court needs to note that in the employer's policy and procedure manual, the plaintiff was told that it was "light cleaning" only because she asked about the work before taking the position. After a couple of days, the couple started asking the plaintiff to do other things like polish silver, clean carpets and walls from the wheelchair marking up the wall, changing air filters and literally breaking down the refrigerator and cleaning it top to bottom, then taking out dishes from all the cabinets top to bottom. This was a little too much for the plaintiff to do with her injuries, so she called the employer owner and told him that he needed to tell them that we were not supposed to do things like this. The plaintiff also told Mr. Hughes that he wasn't running a maid service and his reply was "We're cheaper than maids though" and then I told him I wanted to move somewhere else. The employer would not call and tell them so the plaintiff ended up hurting herself worse and she gave the employer her notice. She did not file a workman's compensation claim even though she should have. The particular job paid 9.50 per hour. Mr. Hughes began to defame the plaintiff's character by telling the couple's daughter that she did not give any type of notice. This caused hostile working conditions between the two of us because of his lying. Next, she went to work at an older couple's house. She liked them also but trouble began to rear its evil head once more. This court should understand about the plaintiff's background. She has a forensics and police science diploma as well as x-ray and medical assisting training and pharmacy technologist. She noticed that the other day home health aide was giving the medication wrong by halving the propranolol dosage from 20 mg to 10 mg. The plaintiff looked on the prescription bottle and noticed that the pharmacist hadn't changed the prescription but the aide was halving the medication anyway. When I asked her about it, she screamed at me "You need to mind your own business and just give the pills like I put them in the bottle". I told her that I didn't feel comfortable giving the wrong prescription medication and I told Bill Hughes to find another person to work over there. The plaintiff made 11.50 per hour over there. The letter has now been copied and given to this court for their review that the employer was told about the hostility

in the work environment.  When the employer hired the clinical care coordinator, Michelle Walters, she told me that she had to get an outside service to do the medication properly because she was doing the medication incorrectly.  The old woman had been in the ER a couple of times while she was there too.  Mr. Hughes was told that these issues had caused several hostile work environments while she was there.  This was discussed at the UI hearing also.  Under sworn testimony, the defendant, Accessible Home Care, states "You weren't even working over there when that happened and the court can hear the plaintiff's response "She told me that when the plaintiff worked at the Lane's house".  The plaintiff began to have sharp pains and bilateral feet pain so she needed to find a better job that fit her disability but ended up getting a worse placement.  This is where the real problems began with the employment and Accessible Home Care.  The plaintiff took a "live-in" position with an older couple.  She liked them as well. She worked 3 days on and 3 days off.  As she began to work her 24 hour shifts, the older couple's daughter had left a list for the cleaning procedures, i.e.  Vacuum every day, dust every day, sweep and mop and clean the bathrooms, on several occasions, the plaintiff told the employer that she was unable to perform some of these duties and that the policy manual stated "light cleaning" only and that they were not running a maid service.  Accessible Home Care also states that it is only light cleaning on their website as well. The hostility began to build over and over again because the employer flat out refused to tell the client that we were not supposed to perform these duties, especially cleaning the carpets.  It was a legal liability because they both had difficulty walking in the house and they could fall. The plaintiff openly told them that they were labor trafficking.  Once the plaintiff divided $170 a day by the 24 hours it equaled 7.08 dollars per hour, below the minimum wage guide lines. The court should note that the plaintiff had to be on call for the couple if they fell out of bed at night or needed something, etc. This proves the Equal Pay Act again as well as a demotion from the employer of record as the plaintiff took a $2.42 hour cut in pay and the ADA of 1990. Under Scott v. Pacific Gas & Electric Co.  994 P.  2d, 834 (Cal.  1995), the California Supreme Court held that an implied agreement not to demote except for good cause may be enforced by demoted employees, rejecting the lower courts theory that the court should not interfere in on going employment relationship. The employer also did not offer health insurance either.  As the plaintiff began to work the 72 to 96 hours she noticed that they didn't pay any overtime.  This proves disparate

6

treatment and disparate impact as well for a unique class. This is when she called the U.S. Department of Labor and asked a couple of questions. Mr. Charles Jackson stated that since the plaintiff was paid by an agency and cleaning was performed, the agency had to pay overtime every week. She thanked the labor representative and hung up. The plaintiff has offered into evidence to the court a copy of the payroll slip that the client's had to sign in order for the plaintiff to be paid. The court should note that housekeeping is listed as discussed with the labor cabinet representative.  Accessible Home Care hired another lady to help with the "live-in" job and they paid her $192 per shift. This was told to the plaintiff by the woman and confirmed by the clinical coordinator, Michelle Walters. The plaintiff told Ms. Walters that the law doesn't work that way, it is equal pay for equal work. This was ignored but the defendant did give the plaintiff one raise and then took it away.  This proves retaliation which violated the policy and procedure manual again as well as retaliation under the section 704(a) of Title VII, section 4(d) of the ADEA, section 503(a) of the ADA and section 207(f) of GINA. This employee didn't last very long and they had to find another replacement. While they were attempting to find proper candidates, she spoke to the employer they had violated the Equal Pay Act and started a hostile working environment again. The employer gave the plaintiff one raise and then took it away again, enhancing the retaliation to this court. Next, they found another employee to work the "live-in" position with the plaintiff. Everything was fine until one day, the employee left her wages on the counter while she was there. She was getting paid $10 more dollars a day than the plaintiff of record, $180. She was also African American/black. This proves the racial discrimination also from the employer. This proves further hostile working conditions also. The new employee also wanted off a lot to go to her son's ballgames. If the employer knew that Ms. Hughes needed off every weekend, they should have given her a M-F job.  When the employer was told about this other Equal Pay Act incident, Michelle Walters denied this even after she showed her the wage slip that was left at the residence. Soon after, this new employee asked the plaintiff to switch with her so she could go to her son's ballgame again. The plaintiff told her that she needed to call Michelle and get another employee over there this time because she had made plans with her family already. The plaintiff already knew that the old couple's family had asked Michelle and Bill Hughes both that they didn't want anybody else over there staying with their family and the

conversation went like this "Listen, mom and dad doesn't want anyone else over there staying with them, just make them switch with each other", "Do it as a favor to me". (Great American Federal v. Novotny) Now, Kaye Hughes openly wrote a statement stating that she never had a conversation with me but the plaintiff never states that she had a conversation with Mrs. Hughes, she stated that Bill had a conversation with his wife and this was not denied on the hearing tape. The court should note that the employer (AKA, Accessible Home Care) had almost 4 months to find someone to work for Sheila Hughes that Saturday. So, the African American employee called me at home the day before I was supposed to go back to work and told me that "Bill Hughes has changed the schedule now, he wants you to work two days on and two days off this week and then switch back to three days on and three days off next week so I can go to the ballgame." The plaintiff told her that she had already told her that she had plans and that she wasn't changing her schedule like that. The plaintiff had a family outing planned with her family and this was good cause to not switch her schedule, especially when she was off on that particular Saturday. She also told her that it was not an emergency either and that other arrangements should be made. The court should note that there was other employees that the defendant could have scheduled on that Saturday, instead of calling me and harassing me on my day off as well as invading my privacy at home. The employee said that no other arrangements would be made and then the conversation ended. The plaintiff attempted to call the supervisor but there was no response, so she texted her and gave her resignation and taking advantage of the at-will statute. This was a good faith effort before the plaintiff leaving the employer. Ms. Hughes was also allowed to leave on holidays to eat with her family when she was not supposed to leave the premises and she also had her sons over there when the policy and procedure manual openly states "No visitors where assigned." Next, the employee applied for her Unemployment benefits and she was sent a letter from the Unemployment office stating that the employer, Accessible Home Care had only paid $750 into the system instead of the $28,000 over the approximate two year period she had been there. The plaintiff reported the employer right away to the IRS in Ogden, UT and she received her whistleblowing letter from the IRS in February 2018. After waiting almost 2 months, she had to submit her W-2 for her 2016 wages to Ms. Liz Carrier at the Unemployment Office. The employer still had not paid into the UI system, even then. This enhances the tax fraud to the

court for the whistle blowing allegations. The wages were calculated and then a monetary redetermination was issued to the plaintiff. Bill Hughes told the initial investigator that it was mandatory that the "live-ins" only switch with each other. This should enhance the conspiracy with Bill Hughes, Mark Williams and Sheila Hughes, after Michelle told her to ask me to switch. Then was dumb enough to admit a text to the clinical coordinator that the plaintiff left stating "I need off December 6th, 2017 and I am not switching my schedule again". Both courts can debut the hearing under oath, as Mr. Hughes states that it was the plaintiff taking off work instead of Ms. Hughes but it was the other way around all of the time. An investigator was assigned, and the employer continued to defamate and slander the plaintiff's name by lying to the investigator and disobeying subpoenas issued by the plaintiff of record. However, after receiving the ruling from the appeal referee, she noted that the subpoenas were denied so the question is how did they find out that subpoenas were issued altogether? The employer and its employees then began to commit libel acts having Mark Williams sign a statement saying he will not attend the hearing and testify, as well as Kaye Hughes for her illegal garnishment of $85 dollars from her last check (mail and wire fraud with internet) and Sheila Hughes Rouse stating that Bill Hughes did not at any time change the plaintiff's schedule in any way, nor did Michelle Walters. During the appeal for UI, the plaintiff told the referee that if he didn't change the plaintiff's schedule, then why wouldn't the other people testify at the hearing? The referee was rude and kept interrupting my questioning and this court also needs to note that Accessible Home Care just submitted her 2016 payroll records but not the 2017 records with the "live-in" pay recorded because he wanted to show her a consistency of "No equal pay act violations". The plaintiff told the referee that this was misrepresentation and concealment. Then, the employer stated that there was hostility everywhere the plaintiff went to work but provided "no reprimands of any kind" on the plaintiff of record as well as he was happy to place the plaintiff at different areas and if the plaintiff was a problem, this would not be the case. (Federal Tort Claim Act)(Defamation and Slander) The plaintiff hasn't heard from the referee but she seemed disorganized and non-attentive. The court can now read the appeal referee's decision. They focused on that there was other employment that the employer could have offered to the plaintiff not on the fact that she quit for good cause. This shows this court the incompetence that the plaintiff has alleged for the injunctive order. The Unemployment Office

should have ruled on behalf of the plaintiff of record based upon the legal fact
that the plaintiff had a good reason not to switch the shifts, it was not mandatory
and Accessible Home Care never shown otherwise. Therefore, the plaintiff
requests that the Circuit Court adopt either to enforce the employment manual to
award the UI benefits or dismiss only the breach of contract allegation due to the
legal fact that the employer's employment manual states that it is not a binding
contract and the plaintiff should not be held accountable to obey the rules to
switch with Ms. Hughes based upon the fact that it was not an emergency, they
had other employees to send over there since the plaintiff had family plans and
this contract was not a binding legal contract or an implied covenant which the
employer could rely on to enforce.


### Conclusion

In short, the plaintiff has proven any and all charges thus far alleged for this
court to review. She can now prove the Forced Labor Condition RICO that the
defendant knew about at the time of her employment. A variety of lawsuits were
filed by a coalition of labor and human rights organizations in January 1999
against U.S. clothing retailers and manufacturers that produce clothing in the
Commonwealth of the Northern Mariana Islands (CNMI). The first suit, filed in a
California state superior court, alleged that the companies violated the California
false advertising and unfair business practices laws by selling clothing made in
CNMI with a "Made in the USA" label under conditions allegedly violating U.S.
Labor laws. (This is the same with the defendant, Accessible Home Care, by false
advertising as an EOE(Equal Opportunity Employer) when he is not as well as
advertising as "light cleaning" when the clients expect maid services and the wage
and hour laws for the overtime violations pursuant to 29 C.F.R. and the working
conditions with the maid services and attempting to force the plaintiff to switch
the shifts when she already had plans and the employer/defendant had the
means to produce another employee to work for Sheila Hughes.)(Unfair Business
Practices) A motion to dismiss this suit was denied in November 1999. A second
suit, filed in the U.S. District Court for the Central District of California, alleged
that the companies used indentured labor to produced clothing in the CNMI in
violation of the Racketeering Influenced and Corrupt Organization Act (RICO).

This suit is discussed in I.1 above.  The third suit, filed in the U.S.  District Court for the CNMI, charged 22 contractors with violations of federal and local laws on wages, hours, and working conditions.  In addition, both the U.S.  Equal Employment Commission and the U.S.  Department of Labor took action against the garment industry in the CNMI in 1999.   The plaintiff has proven her wage and hour law violations pursuant to C.F.R.  29 for the defendant working her 72-96 hours per week with no overtime being paid but the second raise is interlocutory now based on Michelle Walters stating that the plaintiff was paid for Thanksgiving when she had switched with Sheila Hughes because she wanted off to go to her son's ballgame and the plaintiff needs a subpoena pursuant to F.R.C.P.  47 which your clerks has to sign so the U.S.  Marshall can serve them and I can review my time card given to the employer but the movant can already prove the wire and mail fraud by the defendant using a computer to pay her every week and mailing her false pay stub when the overtime should have been on there every week. Accessible Home Care was also working the plaintiff at $7.08 per hour under the federal minimum wage standard.  The Electronic Fund Transfer Act was violated by the owner keeping the overtime money and using it for other purposed other than paying the plaintiff of record.  The conspiracy, defamation, slander and libel acts can be proven with Bill Hughes and Mark Williams by the defendant submitting a statement that "No three way conversation took place with he, Bill Hughes and Michelle Walters" and Sheila Hughes stating that "Bill Hughes never changed the schedule after calling and stating that he did" and the subpoenas had not been issued by the appeal referee as well as Bill Hughes lying the first investigator stating that it was mandatory that the "live-ins" switch with each other and the Federal Tort Claim Act, Defamation, Slander and Libel can be proven based upon the injuries that the plaintiff has suffered.  Breach of contract and implied convenient has been proven as well.  Harassment, Concealment, and Misrepresentation has been proven beyond reasonable doubt based upon the policy and procedure manual, as well as all other allegations to both courts. The Same; Action to Neglect to prevent in 1986(6) because his employees lied on the plaintiff as well as the owner under Papa v. Katy Industries as well as all others discussed with this U.S.  District Court.

## U.S.  District Court Jurisdiction

Wherefore, the plaintiff prays for $150,000 in damages for lost wages and pain and suffering from the Federal Court. The plaintiff requests no reinstatement from the employer and a permanent injunctive order pursuant to F.R.C.P. 65 for no negative references and that they do not relay any information to future employers about this lawsuit. This is God's grace to the employer since the plaintiff was going to request more damages. (Church vs. State)

### Circuit Court's Jurisdiction

Wherefore, the plaintiff prays for $200,000 in lost wages, pain and suffering and other proven tort claims from Accessible Home Care and Bill and Kaye Hughes, she does not request reinstatement at all and a permanent injunctive order pursuant to CR 65 for no negative references and for them not to discuss this lawsuit in any way and this is for all Defendants mentioned;

Wherefore, the plaintiff prays for $2000 from Michelle Walters for Harassment and $10,000 from Sheila Hughes for Harassment, Defamation, Slander and Libel Acts and $25,000 from Mark Williams for Harassment, Defamation, Slander, and Libel Acts for the written statement. However, the court should note that if the Defendants chooses to lie further, the plaintiff will submit another motion for additional claims and remedies for the court to hear at its convenience.

Wherefore, the plaintiff prays for the Circuit Court to reverse the UI Commission Board's Ruling and grant the plaintiff's unemployment benefits and to grant a permanent injunctive relief pursuant to CR 65 that their attorney needs to review the case filed by the plaintiff before their office assigns an investigator since they have been case fixing for years.

Respectfully Submitted,

Misty Lynn Wesley, Plaintiff of Record

P.O. Box 24363

Lexington, Ky. 40524

(859) 321-9361

## Certificate of Service

    This will certify that a true and correct copy of this foregoing Complaint has been mailed to the U.S. District Court and Circuit Courts and a copy will be served via process of service under Rule 4:

Accessible Home Care

Bill and Kaye Hughes

Michelle Walters

Sheila Hughes

3150 Custer Drive, Suite 303

Lexington, Ky. 40517

&

Mark Williams

3995 N. Cleveland Road

Lexington, Ky. 40516-9765

&

Commonwealth of Kentucky

Division of Unemployment Insurance

275 East Main Street

Frankfort, Ky. 40621

&

Shelia Hughes Rouse

3632 Bold Bidder Drive, Unit A

13

Lexington, Ky.  40517-3547

On this the _14th_ day of May, 2018.

*Misty L Wesley*

Misty L.  Wesley/Plaintiff of record